USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

<u>OPINION & ORDER</u>

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF SPECIALIST LLC and Owner and Owner Pro Hac Vice of an 84 foot towing vessel named "SPECIALIST", and an 84 foot towing vessel named "REALIST", for Exoneration from or Limitation of Liability,<br><br>Petitioners. | Case No. 16-CV-5010 (KMK) |
| LESLIE CONKLIN,<br><br>Plaintiff,<br><br>-v-<br><br>SPECIALIST, L.L.C., et al.,<br><br>Defendants. | Case No. 16-CV-2515 (KMK) |
| DONNA AMON,<br><br>Plaintiff,<br><br>-v-<br><br>SPECIALIST, L.L.C., et al.,<br><br>Defendants. | Case No. 16-CV-3353 (KMK) |
| YIRDA GUERRERO HERNANDEZ,<br><br>Plaintiff,<br><br>-v-<br><br>SPECIALIST, L.L.C., et al.,<br><br>Defendants. | Case No. 16-CV-3579 (KMK) |

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF WEEKS MARINE, INC., AS OWNER OF THE M/V TREVOR, A 69' STEEL TOWING VESSEL, OFFICIAL NO. 597716, FOR EXONERATION FROM AND LIMITATION OF LIABILITY,<br><br><div align="center">Petitioner.</div> | Case No. 16-CV-4643 (KMK) |
| IN THE MATTER OF THE COMPLAINT OF TAPPAN ZEE CONSTRUCTORS, LLC, as OWNER PRO HAC VICE OF THE BARGE N181, and TRAYLOR BROS., INC. as OWNER OF THE BARGE N181 FOR EXONERATION FROM OR LIMITATION OF LIABILITY,<br><br><div align="center">Plaintiffs-Petitioners.</div> | Case No. 16-CV-7001 (KMK) |

<u>Appearances:</u>

James E. Mercante, Esq.
Lawrence B. Brennan, Esq.
Kristin E. Poling, Esq.
Rubin, Fiorella & Friedman LLP
New York, NY
*Attorneys for Petitioners Specialist LLC and New York Marine Towing, Inc.*

Ryan J. Lawlor, Esq.
Law Offices of Michael S. Lamonsoff, PLLC
New York, NY
*Attorney for Plaintiff Yirda Guerrero Hernandez*

Andrew V. Buchsbaum, Esq.
Friedman, James & Buchsbaum LLP
New York, NY
*Attorney for Plaintiff Leslie Conklin*

Casey M. O'Brien, Esq.
Hill Rivkins, LLP
New York, NY
*Attorney for Claimant Donna Amon*

Ronald Betancourt, Esq.
Jeanne-Marie D. Van Hemmen, Esq.
Betancourt, Van Hemmen, Greco & Kenyon LLC
Red Bank, NJ
*Attorneys for Petitioner Weeks Marine, Inc.*

Joseph J. Perrone, Esq.
Giuliano McDonnell & Perrone, LLP
Parsippany, NJ
*Attorney for Claimant Tappan Zee Constructors, LLC*

KENNETH M. KARAS, District Judge:

On June 28, 2016, Petitioners Specialist LLC and New York Marine Towing, Inc.

("NYMT," and collectively "Petitioners"), filed a Complaint for exoneration from or limitation

of liability pursuant to 46 U.S.C. § 30505 et seq. ("Limitation of Liability Act") in connection

with the sinking of the towing vessel "Specialist." (*See* Compl. (Dkt. No. 6).)[1]  Before the Court

is Petitioners' Motion to dispose of the Specialist or, alternatively, to shift the cost of storage and

retention of the tug boat to Respondent Weeks Marine, Inc. ("Weeks Marine" or "Respondent").

(*See* Mem. of Law on Behalf of Pet'rs Specialist L.L.C. and New York Marine Towing, Inc., in

Support of Mot. To Dispose of the Wreck of Tug Specialist or Shift the Cost of Preserving the

Wreck to Weeks Marine, Inc. ("Pet'rs' Mem.") (Dkt. No. 23).)[2]  For the reasons stated herein,

the Petitioners' Motion is granted.

## I.  BACKGROUND

### A.  Factual Background

This Action arises from the sinking of the Specialist during the towage of barge "Weeks

533" from Albany, New York to Jersey City, New Jersey. (*See* Compl. ¶ 7.)  The Specialist,

---

[1] Unless otherwise noted, all docket numbers refer to Case No. 16-CV-5010.

[2] The terms "tugboat" and "towing vessel" are used interchangeably throughout this Opinion.

along with the tugging vessels the "Realist" and the "Trevor," was part of a flotilla contracted to tow the Weeks 533.  (*See* Letter from Ronald Betancourt to the Court (June 24, 2016) ("Resp't's Letter") 2 (Dkt. No. 32) 16-CV-4643 Dkt.; Letter Mot. from Claimant Conklin to the Court (July 18, 2016) ("Conklin Letter") 2 (Dkt. No. 50) 16-CV-4643 Dkt.)  On the morning of March 12, 2016, during the flotilla's passage down the Hudson River, the Specialist collided with Barge N181 and sank off the coast of Tarrytown, New York.[3]  The collision resulted in the deaths of three crewmembers, Timothy Conklin ("Conklin"), Harry Hernandez ("Hernandez"), and Paul Amon ("Amon," and collectively with Conklin and Hernandez, the "Decedents").  (*See* Compl. ¶ 8; Conklin Letter 2.)[4]

On or about March 24, 2016, the Specialist was removed from the Hudson River and transported to the facilities of DonJon Marine Co. ("DonJon Marine") in Port Newark, New Jersey where it is currently being held.  (*See* Conklin Letter 2.)  The cost of the removal and transportation of the Specialist was $477,000, (*see id.*), and the vessel is being stored at the expense of $19,500 per month.  NYMT, the vessel's operator, bore the cost of retrieval and incurs the monthly storage fee.  (*See* Pet'rs' Mem. 3, 7; Conklin Letter 2.)

Shortly after the retrieval of the Specialist from the Hudson River, Respondent learned that following an inspection by the Parties, NYMT intended to dispose of the vessel.  (*See* Resp't's Letter 2.)  In a March 28, 2016 letter to NYMT's counsel, Respondent requested that

---

[3] Barge N181 was involved in the New NY Bridge construction project to replace the Tappan Zee Bridge.  An action in connection with the damage caused to Barge N181 was filed in the Southern District of New York on September 8, 2016.  (*See* Compl. (Dkt. No. 1) 16-CV-7001 Dkt.).

[4] Wrongful death actions have been filed in the Southern District of New York on behalf of each Decedent.  (*See* Compl. (Dkt. No. 1) 16-CV-2515 Dkt.; Compl. (Dkt. No. 1) 16-CV-3353 Dkt.; Compl. (Dkt. No. 1) 16-CV-3579 Dkt.)

4

"the Specialist be preserved until [Respondent] is afforded a meaningful opportunity to inspect the Specialist by its experts." (*Id.*)

On March 30, 2016, representatives from each of the Parties to all lawsuits related to the March 12 incident, including attorneys and experts, attended an inspection of the Specialist at DonJon Marine. (*See id.* at 2; Conklin Letter 3.) Petitioners Specialist LLC and NYMT, the respective owner and operator of the Specialist, now move the Court to allow the disposal of the Specialist or alternatively, shift the cost of preservation to Respondent. Respondent opposes, on the grounds that NYMT has a duty to preserve the Specialist, pending sufficient discovery to identify whether further inspections or testing of the vessel is necessary. (*See* Resp't's Letter 2–3.)

## B. Procedural History

Due to the complexity of the litigation at hand and the multiple related cases stemming from the sinking of the Specialist, the Court limits the recounting of the procedural history to only that relevant to the instant Motion. In total, there are six related actions pending before this Court: (1) *In re Weeks Marine, Inc.*, No. 16-CV-4643 (limitation action filed by Weeks Marine)[5]; (2) *Conklin v. Specialist, L.L.C., et al.*, No. 16-CV-2515 (wrongful death action on behalf of Conklin); (3) *Amon v. Specialist, L.L.C., et al.*, No. 16-CV-3353 (wrongful death action on behalf of Amon); (4) *Hernandez v. Specialist, L.L.C., et al.*, No. 16-CV-3579 (wrongful death action on behalf of Hernandez); (5) *In re Specialist LLC*, No. 16-CV-5010 (limitation action filed

---

[5] Weeks Marine initially filed its limitation action in the District of New Jersey on March 15, 2016. (*See* Compl. (Dkt. No. 1) 16-CV-4643 Dkt.) Pursuant to a June 14, 2016 Order from Judge Kevin McNulty, the case was transferred to the Southern District of New York. (*See* Order (Dkt. No. 29) 16-CV-4643 Dkt.)

by Specialist LLC and NYMT); (6) *In re Tappan Zee Constructors, LLC*, No. 16-CV-7001 (limitation action filed by Tappen Zee Constructors).

On July 25, 2016, Petitioners filed the instant Motion for an order permitting the disposal of the Specialist or, alternatively, to shift the cost of the vessel's preservation to Respondent. (*See* Pet'rs' Mem. 2.) On August 29, 2016, Respondent Weeks Marine filed a response in opposition to the Motion, (*see* Mem. of Law in Opp. to the Mots. To Destroy the Specialist or Shift the Cost of Preservation ("Resp't's Mem.") (Dkt. No. 35)), and on September 9, 2016, Petitioners filed a reply. (*See* Mem. of Law in Further Support of the Mots. To Dispose of the Tug Specialist or Shift the Cost of Storage and Retention ("Pet'rs' Reply") (Dkt. No. 36).) On September 12, 2016, Claimant Donna Amon filed a memorandum in support of Petitioners' Motion. (*See* Reply Mem. of Law in Support of Mot. To Permit Disposal of Tug Specialist ("Amon Mem.") (Dkt. No. 37).) [6]

## II. DISCUSSION

### A. Preservation of the Specialist

A party has an obligation to preserve evidence when the party "has notice that the evidence is relevant to litigation—most commonly when suit has already been filed, providing the party responsible for the destruction with express notice, but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation." *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998); *see also Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 436 (2d Cir. 2001) (same). "[A]nyone who anticipates being a party or is a party to a lawsuit must not destroy unique, relevant evidence that

---

[6] Also pending before the Court is a motion to increase the limitation fund posted by Respondent, ((Dkt. No. 39) 16-CV-4643 Dkt.), which the Court will address in a separate Opinion.

might be useful to an adversary." *Zubulake v. UBS Warburg LLC (Zubulake IV)*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003).[7] Furthermore, "the prompt identification and preservation of evidence—physical, documentary, and testamentary—after a major casualty is vital." *N.Y. Marine & Gen. Ins. Co. v. Lafarge North Am., Inc.*, 599 F.3d 102, 122 (2d Cir. 2010) (internal quotations marks omitted). Important evidence "could be lost or compromised if not garnered quickly and preserved carefully." *Id.*

In the past, courts faced with motions to preserve certain discovery items have applied a balancing test which considers the following three factors: "1) the level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence; 2) any irreparable harm likely to result to the party seeking the preservation of evidence absent an order directing preservation; and 3) the capability of an individual, entity, or party to maintain the evidence sought to be preserved, not only as to the evidence's original form, condition, or contents, but also the physical, spatial[,] and financial burdens created by ordering evidence preservation." *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 370 (S.D.N.Y. 2006) (quoting *Capricorn Power Co. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429, 433–34 (W.D. Pa. 2004)).[8] The Court addresses each factor in turn.

---

[7] *Zubulake IV* was the fourth of five pretrial decisions issued in *Zubulake v. UBS Warburg LLC*. The decisions are commonly referred to as *Zubulake I*, *Zubulake II*, *Zubulake III*, *Zubulake IV*, and *Zubulake V*.

[8] In *Treppel*, the court acknowledged the existence of a "more streamlined test" for analyzing a preservation order, but concluded that the distinction between the two tests was immaterial. 233 F.R.D. at 370–71.

B.  Application

### 1.  Continuing Existence and Integrity of the Evidence

In considering the first factor, the continuing existence and maintenance of the integrity of the evidence, the Court assesses the presence or absence of a significant threat to the Specialist.  Pending a decision on the instant Motion, the Court does not doubt the Specialist will continue to be preserved in its present state at DonJon Marine.  Moreover, there is no concern that the evidence will be damaged or altered; as Respondent noted at a conference before the Court on June 28, 2016, the vessel "is secured aboard a barge [at] . . . a very well-known, established marine player in New York."  (Tr. of June 28, 2016 Conf. ("Conf. Tr.") 21:3–5.) Absent this Court's order on Petitioners' right to dispose of the vessel, there is no threat to the integrity of the Specialist.  Accordingly, the first factor is neutral, or at most, weighs slightly in favor of Respondent.

### 2.  Degree of Irreparable Harm

In determining the degree of irreparable harm to the party seeking to preserve the evidence, the Court considers Respondent's argument that it "will be irrevocably prejudiced if the Specialist is allowed to be scrapped before Weeks [Marine] has an opportunity to meaningfully inspect it."  (Resp't's Letter 3.)  Respondent, along with all Parties in all the related actions, was afforded an opportunity to inspect the Specialist shortly after it was recovered from the Hudson River.  (See id. at 2; Pet'rs' Mem. 2.)  While Respondent attended the survey of the vessel, Respondent did not have an expert present because it "does not presently know what to inspect . . . or even which expert(s) to retain."  (Resp't's Letter 3.)  Although Petitioners contend "it is difficult to speculate to the relative benefits of further inspection," (Pet'rs' Mem. 8), it is this very difficulty that Respondent raises as its reason for the preservation.  In fact, Respondent claims that "[t]he relevant questions cannot presently be determined and the answers thereto

8

cannot be considered until . . . [Respondent] has the requisite discovery to understand the nature of the claims against [it]." (Resp't's Letter 3.)

Petitioners have a duty to preserve "unique, relevant evidence that *might* be useful to an adversary." *Zubulake IV*, 220 F.R.D. at 217 (emphasis added). Furthermore, Federal Rule of Civil Procedure 26(b) instructs that parties "may obtain discovery regarding any nonprivileged matter that is *relevant* to any party's claim or defense . . . considering," among other factors, "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b) (emphasis added). "Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept," *Condit v. Dunne,* 225 F.R.D. 100, 105 (S.D.N.Y. 2004), and "the court should and ordinarily does interpret 'relevant' very broadly to mean matter that is relevant to anything that is or *may become an issue* in the litigation," *see Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 n.12 (1978) (emphasis added) (some internal quotation marks omitted). The Court agrees with Respondent that without knowledge of its potential claims or defenses, it is difficult to assess what "may become an issue" in this Action and others before the Court, *id.* (internal quotation marks omitted), and the likely benefit of any future discovery related to the Specialist. For this reason, the Court finds the second factor weighs in favor of Respondent.

### 3. Ability to Maintain the Evidence

Finally, the Court considers Petitioners' ability to maintain the evidence and the "physical, spatial[,] and financial burdens" preservation entails. *Treppel,* 233 F.R.D. at 370 (internal quotation marks omitted). "[T]he presumption is that the party possessing information must bear the expense of preserving it for litigation," *id.* at 373, unless doing so imposes an "undue burden," *Oppenheimer Fund, Inc.*, 437 U.S. at 348 (internal quotation marks omitted).

9

NYMT currently spends $19,500 a month preserving the Specialist, an amount that Petitioners claim "could detrimentally impact the opportunity to settle or satisfy judgments." (Pet'rs' Mem. 3.) Respondent claims that the financial burden of preservation is de minimis compared to the amount at stake in the litigation, (see Resp't's Mem. 7), yet the Parties are unable to determine how long Petitioners will accrue these costs. Respondent informed the Court in June 2016 that it may need three to six additional months to inspect the wreckage, (see Conf. Tr. 20:19–20), but Respondent calculates costs over a two-year period in its opposition to Petitioners' Motion, (see Resp't's Mem. 7–8). More than eight months have passed since the sinking of the Specialist and Respondent has not indicated that it has had the meaningful inspection opportunity it seeks or obtained a greater sense of its future discovery needs. Therefore, the Court notes the uncertain extent of the financial burdens to preserve the evidence and finds that the third factor weighs in favor of Petitioners.

While no single factor under the balancing test is determinative, see Treppel, 233 F.R.D. at 371, the Court finds that Respondent has demonstrated sufficient justification to preserve the Specialist. However, the Court also recognizes the indeterminate financial burdens associated with preservation. Both Petitioners and Respondent apply the seven factors outlined in Zubulake v. UBS Warburg LLC (Zubulake I), 217 F.R.D. 309 (S.D.N.Y. 2003) to the present Motion. (See Pet'rs' Mem. 4–9; Resp't's Mem. 6–10). Zubulake I considered cost-shifting for the production of electronic data, 217 F.R.D. at 317–24, and it is not clear to the Court that the situation at hand is analogous. However, assuming that Zubulake I is applicable and provides helpful guidance here, the Court finds that, on the whole, the factors weigh in favor of shifting the cost of preservation. The lack of outstanding discovery requests, past and ongoing inspection opportunities, the resources available to the Parties, the ability and incentive to control the costs

10

of preservation, and the failure to identify specific benefits of preservation, all favor shifting the cost of preserving the Specialist to Respondent. *See Zubulake I*, 217 F.R.D. at 322 (identifying seven factors to consider in determining whether cost-shifting is appropriate). While the cost of preservation might appear insignificant when compared to the total amount in controversy stemming from the sinking of the vessel, the Court recognizes the potentially detrimental effect that erosion of funds may have on Petitioners' ability to litigate and settle these cases.

Accordingly, the Court finds that the equities compel that Respondent undertake storage of the Specialist at its own facility or pay for the preservation of the vessel at its current location.[9] The Court agrees with Petitioners that Respondent—the only party requesting the continued preservation of the vessel—is in the best position to assess its needs in relation to the Specialist's preservation. By preserving the vessel, but shifting the costs of preservation, Respondent will be encouraged to expeditiously determine its needs in relation to the vessel, but will not be foreclosed from an important source of information.

---

[9] Petitioners assert that an attempt to transfer the Specialist to another storage facility could result in further damage to the vessel, environmental harm, and substantial costs. (*See* Pet'rs' Mem. 8–9.) The Court takes note of these risks, but concludes that Respondent can consider such factors in its decision to continue to preserve the Specialist at DonJon Marine or its own facility.

## III.  CONCLUSION

For the foregoing reasons, the Court grants Petitioners' Motion to shift the cost of preservation of the Specialist to Respondent.  The Clerk of Court is respectfully requested to terminate the pending Motion.  ((Dkt. No. 23); (Dkt No. 50) 16-CV-4643 Dkt.)

SO ORDERED.

Dated:    November 22, 2016
          White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE